UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SABRENA BAKER, *et al.*,

      Plaintiffs,

  v.

COLLINS MOBILE, LLC,

      Defendant.

Case No. 2:20-cv-1996
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on the Parties' Joint Motion for Approval of Collective Action Settlement (ECF No. 20). For the following reasons, the motion (ECF No. 20) is **GRANTED**.

### I.

On April 20, 2020, Representative Plaintiffs commenced this action which asserts collective wage-and-hour claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and class action wage and hour claims under the Ohio Minimum Fair Wage Standards Act, and the Ohio Prompt Pay Act (O.R.C. § 4113.15), on behalf of current and former hourly production employees who worked for Defendant Collins Mobile, LLC ("Defendant"). Representative Plaintiffs allege that Defendant violated the FLSA by failing to pay them and other similarly-situated employees (1) for the meal breaks they were unable to take or that were otherwise interrupted by job duties, (2) for time they spent traveling between stores during the workweek, and (3) for compensable time worked which was lessened through manual time punch edits. (ECF No. 1).

On April 20, 2020, the Parties submitted a stipulation to stay these proceedings in order to allow the Parties time to exchange information and participate in a mediation with a private mediator in an attempt to resolve this matter. (ECF No. 6). The Court granted the Parties' stipulation on June 25, 2020. (ECF No. 7). On October 1, 2020, the Parties engaged in an all-day mediation session under the direction of mediator Michael Ungar and reached a settlement.

On December 4, 2020, the Parties filed their joint Motion for Approval of Collective Action Settlement. (ECF No. 20, "Joint Mot."). The Settlement will cover Representative Plaintiffs, as well as any of the 877 Putative Collective Members who, within 60 days of the mailing of the Notice, elect to participate in the Settlement by signing and returning the Claim, Release, and Consent to Join Settlement form, attached as an exhibit to the Settlement Agreement. The total settlement amount is $358,125.00, which covers the individual payments to the Plaintiffs, a service award to Representative Plaintiffs, attorneys' fees and expenses for Plaintiffs' counsels, the cost of settlement administration. The cost of the mediator, and the settlement of Representative Settles' individual relation claim. (*Id.* at 3). The Settlement Agreement provides that the action is to be dismissed with prejudice.

## II.

"An employee's claims under the FLSA generally are non-waivable and may not be settled without supervision of either the secretary of Labor or a district Court." *Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 U.S. Dist. LEXIS 166605, at *6 (S.D. Ohio Dec. 2, 2016). "Thus, the proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness." *Id.* at *6–7 (internal citations omitted). "If a settlement in an employee FLSA suit reflects a reasonable compromise

over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement in order to promote the policy of settlement of litigation." *Id.* (internal citations omitted).

"The Sixth Circuit has identified the following seven factors a court may consider in determining whether the settlement of FLSA claims is 'fair and reasonable:' (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement." *Snide v. Disc. Drug Mart, Inc.*, No. 1L11CV244, 2013 U.S. Dist. LEXIS 40078, at *3–4 (N.D. Ohio Feb. 27, 2013) (internal citation omitted). "These factors have also been applied by Courts in evaluating the fairness, reasonableness, and adequacy of an FLSA settlement." *Vigna*, 2016 U.S. Dist. LEXIS 166605 at *6.

### III.

The Parties argue that the factors weigh in favor of the Court approving this settlement. The Parties assert the following factors are relevant to the Court's decision and the Court agrees.

#### A. Indicia of Fraud or Collusion

The Parties state that their counsel "have extensive experience litigating FLSA claims, including claims of unpaid overtime." (Joint Mot. at 5). Additionally, the Parties state that the settlement was achieved after a full day of mediation. (*Id.*) "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006). There is no evidence of fraud or collision in this case and instead only evidence of good-faith arms-length negotiations. This factor favors approval of the settlement.

**B. Complexity, Expense, and Duration of Litigation**

The Parties argue employment cases, and wage-and-hour cases in particular, are expensive and time-consuming. (Joint Mot. at 6). Specifically, in this case, the Parties continue to disagree as to the merits of the case which include issues regarding damages and applicability of the statute of limitations. (*Id.*) Thus, the Parties argue that if forced to litigate this case further, the Parties would engage in "complex, costly, and protracted wrangling." (*Id.* at 6).

Here, the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process provide justifications for the Court's approval of the proposed Settlement. *See Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 U.S. Dist. LEXIS 26464, at *9 (S.D. Ohio Feb. 20, 2019) (finding the same); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) (finding the same). If this matter was not settled at this time the Parties would have to engage in discovery, there would likely be summary judgment motions, case management conferences, trial preparation, and more. This would cause the parties expense and time. Accordingly, this factor weighs in favor of approving this settlement.

**C. Sufficiency of Investigation**

The Parties contend that they have engaged in substantial investigation and informal discovery, which has allowed them to act intelligently. (Joint Mot. at 6). Specifically, Defendant produced Plaintiffs' compensation and time records for the relevant time period. (*Id.*) Plaintiffs' counsel, with a consultant, used that data to "construct a damages model." (*Id.*)

"To confirm that Named Plaintiffs 'have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement,' the Court must consider the amount of discovery engaged in by the parties." *Wright*, 2018 U.S. Dist. LEXIS 140019 at *9

4

(quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006)). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the [C]ourt should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Id.* (quoting *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 U.S. Dist. LEXIS 14890, at *19 (E.D. Mich. Mar. 31, 2006)). "In this consideration, 'the absence of formal discovery is not unusual or problematic, so long as the parties and the [C]ourt have adequate information in order to evaluate the relative positions of the parties.'" *Id.* at *9–10 (citing *UAW*, 2006 U.S. Dist. LEXIS 14890 at *19).

In this case the parties engaged in informal discovery when Defendant provided Plaintiffs' counsel with Plaintiffs' relevant compensation and time records, and when Plaintiffs' counsel and a consultant created a damages model. This informal discovery is sufficient for the Court to believe both parties made an informed decision to enter into this settlement agreement. This factor weights in favor of approving the settlement agreement.

### D. Likelihood of Success on the Merits

The Parties argue that while both sides "believe in the merits of their positions, they recognize that the litigation of claims is uncertain in terms of duration, cost, and result." (Joint Mot. at 6.) The Parties believe continued litigation "would be risky for all." (*Id.*) They further opine that even if Plaintiffs succeed on the merits, the amount of recovery is disputed and uncertain. (*Id.*) "The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Wright*, 2018 U.S. Dist. LEXIS 140019 at *10–11 (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245

(6th Cir. 2011)).

Here, Plaintiffs allege they and others similarly situated were not paid overtime wages as required by the FLSA. (Compl., ECF No. 1, and PageID #1). Defendant has not filed an Answer due to a Stay, but informally disputes Plaintiffs' claims. (*See* Joint Mot. 6). Due to the uncertainties inherent in these claims the likelihood of success is unclear. Thus, this factor weighs in favor of approving the settlement. *See Wright*, 2018 U.S. Dist. LEXIS 140019 at *11 (finding the same); *Mitchell*, 2019 U.S. Dist. LEXIS 26464 a *12 (finding the same).

### E. Opinion of Counsel

The Parties state that their "Counsel are experienced in wage-and-hour collective and class action cases." (Joint Mot. at 7). They "support the Settlement as fair and reasonable, and in the best interest of the Plaintiffs as a whole." (*Id*.) "The recommendation of [] [c]ounsel, skilled in class actions and corporate matters, that the Court should approve the [s]ettlement is entitled to deference." *Wright*, 2018 U.S. Dist. LEXIS 140019 at *11–12; *see, e.g., Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs .... [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

The Court gives deference to the Parties' counsel's belief that the settlement is fair and reasonable, particularly in light of counsel's experience in this type of litigation. Thus, this factor weighs in favor of approving the settlement.

### F. Settlement Distributions

Defendant produced Plaintiffs' relevant compensation and time records, which Plaintiffs' counsel consultant used to create a damages model. (Coffman Decl. ⁋ 11, ECF No. 20-3). Using that model, the Parties negotiated and ultimately came to an agreement. (*Id.*) Pursuant to this agreement, the distribution made to each Potential Opt-In Plaintiff will be a minimum of $10, plus a *pro rata* share of all Potential Opt-In Plaintiffs' total damages as computed according to Section III(F)(7) of the Settlement Agreement. (ECF No. 20-1 at PageID #82). These payments are projected to range from $10 to $3,127.22, with an average payment of $259. (Joint Mot., ECF No. 20, at PageID #71, n.4). "As a part of its exacting and thorough examination of a class action settlement, a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *31 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 855 (1999)). Here the damages model influenced the settlement agreement, and individual distributions will be calculated based on a proportionality principle, while also affording a baseline. The Court finds this allocation of the settlement proceeds fair and reasonable in this case.

The Parties also seek to give $5,000, each, (in addition to his individual payment) to both Named Plaintiffs for their time and effort in prosecuting this matter. (Joint Mot. at 3). "Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent." *In re Fun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 266, 373 (S.D. Ohio 1990). The Court finds it reasonable for the named Plaintiffs in this case, who put in time, effort and detailed factual information, to receive an allocation as provided for in the settlement agreement.

### G. Attorneys' Fees and Expenses

Finally, the Parties' agreement allocates attorney's fees for Plaintiffs' counsel in the amount of $119,375, one-third of the total settlement amount. (ECF No. 20-1 at PageID #82; Coffman Decl. ⁋ 27). Additionally, the settlement agreement provides for payment of Plaintiffs' counsel's costs, (ECF No. 20-1 at PageID #82), which amount to $4,531.20. (Coffman Decl. ⁋ 29).

If a plaintiff prevails under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In determining the reasonableness of fees, the Court is cognizant that "[t]he purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). Further, "an award of attorney fees [] encourages the vindication of congressionally identified policies and rights." *Id.* at 1134–35. District courts have approved collective and class actions fee requests when the fee is one-third of the total settlement amount. *See e.g.*, *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 U.S. Dist. LEXIS 79606, at *13–14 (W.D. Mich. Oct. 26, 2007) (citing *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). The Court finds the fee-request here, seeking one-third of the total settlement agreement, along with the costs-request, are reasonable.

### H.  Balancing the Relevant Factors

All of the relevant factors weigh in favor of approving this settlement. The Court finds the settlement reflects a reasonable compromise over issues and therefore is fair and reasonable. *See Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 U.S. Dist. LEXIS 67887, at *6–7 (S.D. Ohio June 24, 2022) ("If a settlement in an employee FLSA suit reflects 'a reasonable compromise over issues', such as FLSA coverage and/or computation of back wages that are 'actually in dispute,' the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'") (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). Thus, the Court **APPROVES** the settlement agreement.

### IV.

In sum, the Joint Motion for Approval of Collective Action Settlement (ECF No. 20) is **GRANTED.** The Settlement Agreement and Release (ECF No. 20-1) is **APPROVED** and the case is **DISMISSED**. This Court shall retain jurisdiction over this matter for the purpose of enforcing the Settlement Agreement. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

<u>12/16/2020</u>                             <u>s/Edmund A. Sargus, Jr.</u>
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                        **UNITED STATES DISTRICT JUDGE**

9